[No. 45978. En Banc. May 1, 1980.]

AGENCY BUDGET CORPORATION, *Respondent,* v. WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant.*

PREMIUM ADVANCE COMPANY, *Respondent,* v. WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant.*

Carney, Stephenson, Siqueland, Badley, Smith & Mueller, by *Basil L. Badley* and *Timothy J. Parker*, for appellant.

*Schweppe, Doolittle, Krug, Tausend & Beezer*, by *Fredric C. Tausend* and *James B. Street*, for respondents.

WILLIAMS, J.—This is a direct appeal from a trial court order granting a partial summary judgment in favor of respondent Agency Budget Corporation and subsequent summary judgments in favor of both respondents. At issue in this declaratory judgment action is the meaning and applicability of a "'covered claim'", as that term is used in the Washington Insurance Guaranty Association Act, RCW 48.32.030(4) (Laws of 1975, 2d Ex. Sess., ch. 109, § 3, p. 371).

Appellant Washington Insurance Guaranty Association (association) is a nonprofit unincorporated legal entity created by and existing pursuant to the Washington Insurance Guaranty Association Act (act), RCW 48.32. One purpose of the act is to provide a mechanism for the expeditious payment of claims asserted by Washington policyholders against insolvent insurers. The association accumulates funds resulting from assessments levied on member insurers and uses these funds to pay claims as they arise. RCW 48.32.010, .060, .070. All foreign and domestic insurance companies which write direct insurance as specified in RCW 48.32.020 are required to be members of the association as a condition of transacting business in Washington. RCW 48.32.040.

Plaintiffs and respondents Agency Budget Corporation and *Premium Advance Company* are in the business of financing insurance premiums for purchasers of insurance policies. Respondents pay a policyholder's full premium to

an insurer and collect a downpayment and periodic installments from the insured. In addition, respondents receive an assignment of each insured's claim to the return of unearned premiums which would become due to an insured from an insurer in the event of a policy cancellation prior to term.

Medallion Insurance Company (Medallion), a Missouri corporation, was in the business of providing automobile liability insurance. On September 12, 1975, a Missouri court issued an order of insolvency against Medallion cancelling all of its policies then in force. As a result, unearned premiums became due to respondents, assignees of claims of Washington residents who had been insured by Medallion.

Both respondents filed claims in the Missouri conservatorship proceeding and in the Washington proceeding against the Washington State Insurance Commissioner. In addition, in October 1976, respondents filed claims for unearned premiums with the association, pursuant to the act.

The association denied the claims on the ground that they were not "covered claims" within the meaning of RCW 48.32.030(4). Under the act, as originally enacted in 1971, claims for unearned premiums were excluded from coverage.[1] The act was amended in 1976, however, to permit payment of unearned premiums to claimants subject to a $100 deduction from each claim.[2] RCW 48.32.030(4);

---

[1] "(4) 'Covered claim' means an unpaid claim, excluding one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise." Laws of 1971, 1st Ex. Sess., ch. 265, § 3(4), p. 1206.

[2] "(4) 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (a) the claimant or insured is a

RCW 48.32.060(1)(a). The amendment took effect on June 25, 1976, after the adjudication of Medallion's insolvency, but before respondents filed their claims with the association.

After the denial of their claims, respondents brought separate actions against the association in King County Superior Court. Each sought a declaratory judgment that its claim was a "covered claim" within the meaning of the statute and an order that the claims be paid. The court consolidated the two actions on stipulation by all parties that the legal issues and factual setting giving rise to the controversy were identical.

The court granted Agency Budget Corporation's motion for partial summary judgment on the grounds that the legislature clearly intended that the 1976 amendment cover claims for unearned premiums associated with insolvencies adjudicated prior to the effective date of the amendment. The court further found that retroactive application of the amendment would not impair any vested rights of the association or its members, nor would the association suffer any injuries of constitutional proportions.

We granted the association's motion to transfer the case from the Court of Appeals, because it presented an issue of broad public import under RAP 4.2(a)(4); RAP 4.3. Of the two respondents below, only Agency Budget Corporation (corporation) has filed an appellate brief in response to the appeal. The questions we must decide are whether the

resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise: *Provided,* That a claim for any such amount asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a 'covered claim' may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer. In addition, 'covered claim' shall not include any claim filed with the association subsequent to the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." RCW 48.32.030(4) (Laws of 1975, 2d Ex. Sess., ch. 109, § 3, p. 371).

association is liable for the corporation's claims under a prospective application of the 1976 amendment to RCW 48.32.030(4), and, if not, whether the amendment may be applied retroactively against the association.

I

The association argues that it is not liable to the corporation for unearned premiums if the 1976 amendment to the act is given prospective effect only. Relying on this court's decision in *Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974), the association contends that it is liable under the statute only upon an adjudication of insolvency against a member insurance company. Since Medallion was ordered dissolved many months before the effective date of the amendment, the association cannot be liable for the claims arising from the unearned premiums associated with Medallion's insolvency.

In *Aetna,* appellants were member insurers of the Washington Life and Disability Insurance Guaranty Association, a nonprofit legal entity created pursuant to RCW 48.32A, to assure the performance of contractual obligations of insurers to policyholders of life and disability insurance when an insurer becomes insolvent. The appellants resisted assessments imposed on them by the Life and Disability Guaranty Association upon an insurer's insolvency. *Aetna,* at 534. They argued that assessments based on premiums issued before the effective date of the act, May 21, 1971, required a retroactive application of the act and were therefore unconstitutional. *Aetna,* at 534–35. We rejected that argument, holding that the "precipitating event" to appellants' liability was the adjudication of insolvency, which occurred *after* the legislation took effect. *Aetna,* at 535.

We agree with the association that the precipitating event in this case is likewise the adjudication of insolvency. The express purpose of the act is to impose obligations on the association and its member insurers *when an insurer*

*becomes insolvent. See* RCW 48.32.060(1)(a), .060(1)(c). This was our conclusion in *Aetna,* at page 535, and we see no reason to alter it when interpreting this act. The two acts are substantially the same in their intended effect, namely, to protect policyholders from the unfavorable effects of insurer insolvency.

The corporation argues that *Aetna* is distinguishable, because unlike any of the provisions of RCW 48.32A, RCW 48.32.030(4) contains a timely filing proviso. In order to constitute a "covered claim" within the meaning of RCW 48.32.030(4), a claim must be filed before "the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer." Since a claim must be timely filed for a claimant to recover, the corporation contends that there is no liability to the association until a claim is filed against it. In other words, the precipitating event is the filing of the claim, not the order of liquidation. Since the corporation concededly filed its claim after the date the 1976 amendment took effect, it concludes that the association is liable for unearned premiums under the amendment.

█ A timely filing requirement is not a substantive element of a right of action, but is merely a procedural step necessary to enforce a claimant's right to recover. *Wheaton v. Department of Labor & Indus.,* 40 Wn.2d 56, 58, 240 P.2d 567 (1952); RCW 51.28.050. A right may be created upon the happening of some precipitating event, but failure to file a timely claim is no more than a limitation on the enforcement of that right. *Wheaton,* at 58. In this case, the right to claim unearned premiums is created by the adjudication of insolvency. *Aetna,* at 535. That same event determines the liability of the association to pay those claims. Failure to file a claim by the date set by the court in its order of insolvency merely extinguishes an existing right; timely filing does not create it. It follows that since the order of insolvency—the precipitating event—occurred on

September 12, 1975, many months before the date of the amendment creating a right to unearned premiums, the association cannot be liable unless the amendment is applied retroactively.

Moreover, assuming respondent is correct in stating that timely filing of a claim is the precipitating event, the express terms of the act would exempt the association from liability in this case:

> (1) The association shall:
> (a) *Be obligated to the extent of the covered claims existing prior to the order of liquidation and arising within thirty days after the order of liquidation,* or before the policy expiration date if less than thirty days after the order of liquidation, or before the insured replaces the policy or on request effects cancellation, if he does so within thirty days of the order of liquidation, . . .

(Italics ours.) RCW 48.32.060(1)(a). If liability does not arise until the claim is timely filed, as the corporation asserts, then the association could not be liable until October 28, 1976, the date respondent filed its claim. Since that date occurred more than 30 days after the order of liquidation, by the express terms of the statute the association could not be liable.

■ Finally, we find no merit in the corporation's argument that the association is not liable until it has assessed member insurers for claims paid and those assessments have been accepted by the member insurers by their decision to continue doing business in Washington. RCW 48.32.040, .060(1)(c). Such an interpretation strains the language of the statute. Moreover, the extent of any *member insurer's* obligation is a separate question from the *association's* obligation to pay covered claims. We conclude, therefore, that under a prospective application of RCW 48.32.030(4) (Laws of 1975, 2d Ex. Sess., ch. 109, § 3, p. 371), the association is not liable for the amount of unearned premiums to respondent.

## II

The parties agree that the association would be liable for unearned premiums if the statute were given retroactive effect. The dispute arises over whether the amendment can be thus applied.

■ A statute is presumed to operate prospectively unless the legislature indicates that it is to operate retroactively. *Johnson v. Beneficial Management Corp.*, 85 Wn.2d 637, 641, 538 P.2d 510 (1975); *Amburn v. Daly*, 81 Wn.2d 241, 246, 501 P.2d 178 (1972). It is undisputed that the 1976 amendment to RCW 48.32.030(4) contains no express language that the section is to be given retroactive effect.

The corporation contends, however, that the face of the statute indicates the legislature's intent that it operate retroactively. The statute provides in pertinent part:

> (4) "Covered claim" means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, *if such insurer becomes an insolvent insurer after the first day of April, 1971 . . .*

(Italics ours.) RCW 48.32.030(4) (Laws of 1975, 2d Ex. Sess., ch. 109, § 3, p. 371).

Since unearned premiums are included as "covered claims" by the 1976 amendment, the corporation argues that the April 1971 language must apply to all claims included in the definition. If the legislature had intended to impose liability for unearned premiums arising only after the effective date of the 1976 amendment, the corporation argues, it would have amended that language to the later date.

We find this argument speculative. An express limitation of unearned premiums to the later date would have required a substantial rewriting of the statute to ensure that other types of covered claims would still be covered as of the 1971 date. Moreover, we have carefully analyzed the 1971 statute, which, although it took effect on May 21,

1971, was made applicable to claims arising from insolvencies after April 1, 1971. The statute on its face had a limited retroactive effect, therefore, but there was no attempt to apply it retroactively beyond those few weeks between May 21 and April 1, 1971. The 1976 amendment, which granted an entirely new right of action—the right to claim unearned premiums—does not indicate that the legislature intended any retroactive effect sufficient for us to find the presumption of prospective application rebutted.

Finally, it is noteworthy that the legislature attached an emergency clause to the 1976 amendment, providing that the amendatory act take effect immediately upon filing with the Secretary of State. Laws of 1975, 2d Ex. Sess., ch. 109, § 12, p. 377. Had the legislature intended a retroactive effect, there would have been no need for an emergency clause. The fact that the Governor vetoed the emergency clause because of its effect on provisions not relevant here does not alter our conclusion regarding the *legislature's* intent with respect to retroactive effect.

We recognize that there is an established exception to the presumption of prospective intent. When a statute is remedial and concerns procedure or forms of remedies, there is a presumption that the statute is intended to apply retroactively. *Hammack v. Monroe St. Lumber Co.,* 54 Wn.2d 224, 231–32, 339 P.2d 684 (1959); *Haddenham v. State,* 87 Wn.2d 145, 148, 550 P.2d 9 (1976).

The association relies on *Hammack* to support its argument that the 1976 amendment to RCW 48.32.030(4) created a new right of action in policyholders and a corresponding new liability on the association. In *Hammack,* the court dealt with the workmen's compensation law (Laws of 1939, ch. 41, § 2, p. 121), which made a defendant employer statutorily immune from suits by injured employees. Plaintiff was injured when the immunity was in effect. Subsequently, the law was amended to make such employers amenable to suit, and plaintiff then sought to sue his employer under the new statute (Laws of 1957, ch. 70, § 23, p. 279). We held that the amendment creating liability in

the employer was substantive, not procedural; it created "a right of action where before there was none." *Hammack,* at 232.

The corporation contends, on the other hand, that the situation in the present case is covered by our decision in *Haddenham.* There, we held that the exclusive remedy provision in the crime victims' compensation act, RCW 7.68.040, was intended to be retroactive. Moreover, the provision was a remedial one, we said, in that it improved a crime victim's chance of recovery for injuries. *Haddenham,* at 148. The corporation contends the facts in *Haddenham* are a precise parallel to the circumstances here: that the amendment to RCW 48.32.030(4) affords a claimant a better chance of recovery than was possible prior to enactment of the amendment. Thus, the court should presume here, as in *Haddenham,* an intent to apply the amendment retroactively.

In our view, *Haddenham* is not applicable to this case. Prior to the enactment of the crime victims' compensation act, victims like Haddenham could bring an action under the tort claims act, RCW 4.92.090. Thus, the legislature did not, in the crime victims' compensation act, create an entirely new cause of action; it merely substituted it as the exclusive remedy for a cause of action previously established. That is, the statute altered a claimant's remedy. In that situation, the retroactive application could be presumed. Here, however, no claimant was in any way entitled to unearned premiums before the 1976 amendment included them in a "covered claim". The corporation alleges that claimants to unearned premiums had "little chance of full recovery" for financial loss before the date the amendment took effect. In fact, such claimants had *no* chance of *any* recovery of unearned premiums from the association before that date.

Since we hold that the 1976 amendment created a new cause of action and corresponding liability, there is no presumption of retroactivity. Further, the corporation has not rebutted the presumption of prospectivity that attaches

to new legislation. *Johnston v. Beneficial Management Corp., supra; Amburn v. Daly, supra.* Accordingly, we conclude that the amendment may only be applied prospectively. Since we also have concluded that there is no obligation for unearned premiums under a prospective application of the amendment, we hold that the association is not liable for the claims to unearned premiums arising from an adjudication of insolvency prior to June 25, 1976.

The summary judgments are reversed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.