# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SHARON RONSSE,

        Respondent,

        v.

MICHAEL RAY PRICE and
ENDEAVOR NW INC., a Washington
Corporation,

        Appellants.

No. 86350-9-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — Michael Price and Endeavor NW Inc. (together "Price") appeal the order denying his motion for reconsideration seeking reasonable attorney fees. His appeal presents the question whether a contractual attorney fee provision covers the claims in the lawsuit. Sharon Ronsse entered into agreements with Price to sell him real property, and business agreements to transfer nursery assets and assist Price in the continuing operation of a nursery on site in exchange for a salary and share of the company's profits. Ronsse sued Price alleging, among other claims, that Price had failed to pay Ronsse's salary and profits from the nursery. Ronsse's claims were dismissed at summary judgment, and Price sought reasonable attorney fees based on a fee shifting provision in the contracts conveying real property. The superior court denied Price's request. Because the fee shifting provision embraced only the real property contracts, not the business agreements that gave rise to Ronsse's claims, we affirm.

I

The parties agree that Ronsse owned four parcels of land and operated a nursery business on three of them. In June 2016, Ronsse and Price entered into a residential real estate purchase and sale agreement (REPSA), using a standard form copyrighted in 2015 by the Northwest Multiple Listing Service, for the parcels the parties refer to as lots 1, 3, and 4, for $850,000. That same month, Ronsse and Price entered into a second REPSA for lot 2, for $350,000. The parties never closed on these contracts. At times, other parties were involved in the transactions on Price's side, but as they are not relevant to the issues in this appeal, we omit reference to them.

In January 2017, Ronsse and Price entered into the "Woods Creek Nursery Business Agreement," referred to by Price as the "first business agreement." The first business agreement stated the parties had entered into a purchase and sale agreement for four parcels with an anticipated closing date of March 31, 2017. Price agreed that, beginning January 1, 2017, he would form a new company responsible for "all operations and monthly ongoing expenses related to the existing four parcels and the daily operations" of the nursery. The agreement stated, "All existing nursery assets including plant inventory, structures, equipment and infrastructure are included with the property sale and will [be] transferred to" Price's new company after closing of the property purchase. In exchange, the agreement stipulated that Ronsse would receive a salary and share of profits from the business for the years 2017 through 2021.

2

In March 2017, the parties entered into a new REPSA, dated March 1, 2017, for only lot 2, for $450,000, and they closed on that contract in June 2017. An addendum to this REPSA stated, "Buyers shall assume any and all business expenses related to the nursery operation after January 1st, 2017, including monthly mortgage payments as per duly signed Woods Creek Nursery Business Agreement (1 page attached)."

In December 2017, the parties entered into a new REPSA for only lots 3 and 4, for $450,000. Under its "Addenda," it included as "Exhibit C" a "PSA dtd [dated] 3/1/2017." The REPSA for lots 3 and 4 closed in March 2018. The parties signed another REPSA in December 2017 for only lot 1, but the parties never closed this transaction.

Later in December 2017, after the new REPSAs had been signed, the parties entered into a second "Woods Creek Nursery Business Agreement," or the "second business agreement." The second business agreement noted the three parcels under then pending REPSAs, and repeated that the nursery assets "are included with the property sale" and would transfer after the closing on lots 3 and 4. The agreement entitled Ronsse to shares of profits for the company from 2017 through 2021, and a monthly fee from January 2017 to December 2017. The agreement had a provision for Ronsse to lease lot 1 to Price for $1 per month "for liability purposes," as lot 1's REPSA was anticipated to close as late as December 20, 2019.

Ronsse initiated this action against Price in June 2020. She asserted six claims in her second amended complaint. These claims were for (1) breach of contract for failure to pay her profit shares under the business agreements, (2) breach of the covenant of good faith and fair dealing for the same, (3) unjust enrichment for the use of her land to exhibit a model manufactured home, (4) quantum meruit for training that Ronsse provided to a new manager for the ongoing nursery business, (5) breach of contract for failure to pay monthly compensation under the first business agreement, and (6) breach of contract for failure to pay monthly compensation under the second business agreement. In both her original complaint and her second amended complaint, Ronsse alleged that Price's delay in closing the REPSAs deprived her of the anticipated benefit of the purchase money, thus delaying her plans and forcing her to incur additional debts to cover living expenses. However, Ronsse did not assert any claim for relief on this basis, instead limiting her claims to breaches of the business agreements.

The superior court dismissed all of Ronsse's claims on summary judgment. Price moved for an award of attorney fees as prevailing party under RCW 4.84.330. Price relied on the attorney fee provision in the general terms of the first REPSA." The provision states,

> q. Professional Advice and Attorneys' Fees. Buyer and Seller are advised to seek the counsel of an attorney and a certified public account to review the terms of this Agreement. Buyer and Seller shall pay their own fees incurred for such review. However, *if Buyer or Seller institutes suit against the other concerning this Agreement* the prevailing party is entitled to reasonable attorneys' fees and expenses.

(Emphasis added.) The superior court denied Price's motion. Price moved for reconsideration. Price appeals the superior court's order denying reconsideration.

II

A

We have said that a trial court's decision whether to grant reconsideration is reviewed for abuse of discretion. Dynamic Res., Inc. v. Dep't of Revenue, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022). Arguing that whether attorney fees may be recovered is a question of law, Price seeks de novo review on that issue. Ronsse agrees, citing Ethridge v. Hwang, 105 Wn. App. 447, 459-60, 20 P.3d 958 (2001). Based on the parties' agreement, and because it does not affect our decision, we assume de novo review is appropriate.

B

Price argues that the terms of the business agreement, though "not formally incorporated," are "part of the transaction and, therefore, effectively incorporated into the [first] REPSA." And "regardless of whether the Business Agreement was formally incorporated into the REPSAs," the two documents are "integral to each other." Therefore, he reasons, Ronsse's claims for breach of the business agreements are subject to the fee-shifting provision of the REPSAs. We disagree.

Price cites case law, including decisions interpreting the same fee shifting provision from the standard real estate contract, determining when a claim is a claim "on a contract" for purposes of the contract's fee shifting provision, even though the claim is not one for breach of that contract. In Seattle First National

Bank v. Washington Insurance Guaranty Association, insurance agreements provided for the prevailing party to recover fees to enforce any obligation under the policy. 116 Wn.2d 398, 411, 804 P.2d 1263 (1991). When the insurer became insolvent, the insured asserted the policy fell within the guaranty association's coverage. Id. at 402, 411. The first issue before the Supreme Court was whether the agreements constituted "credit or surety insurance" and so were excluded from the guaranty association's coverage. Id. at 403. After finding the agreements were covered by the guaranty association, the court held the fee shifting provision applied, even though the bank's claim implicated a legal question separate from any obligations under the policy. Id. at 413. This provided the rule that "an action is on a contract if the action arose out of the contract and if the contract is central to the dispute." Id. Because resolving the dispute required examination of the agreements' "provisions and the risks they insure," the action was "on the contract." Id.

We have applied the rule in real estate cases, holding that a buyer's tort claim for misrepresentation of the condition of real property " 'arise[s] out of' " the agreement to transfer ownership, despite not being for breach of contract, and is therefore subject to a fee shifting provision in the purchase and sale agreement for claims " '[c]oncerning; ' " the Agreement. Brooks v. Nord, 16 Wn. App. 2d 441, 446, 480 P.3d 1167 (2021) (quoting Brown v. Johnson, 109 Wn. App. 56, 58, 34 P.3d 1233 (2001)); see Borish v. Russell, 155 Wn. App. 892, 907, 230 P.3d 646 (2010). In Brooks, we adhered to the rule, and awarded attorney fees, despite

6

acknowledging that the form at issue was excluded by statute from "being considered part of any written agreement," including the REPSA. 16 Wn. App. 2d at 446, 450-51. We reached a similar result in Edmonds v. John L. Scott Real Est., Inc., allowing attorney fees on a plaintiff's successful breach of fiduciary duty claim for misappropriation of earnest money based on the fee shifting provisions of the buyer/broker and earnest money agreements. 87 Wn. App. 834, 855-56, 942 P.2d 1072 (1997). Because the buyer/broker agreement defined the fiduciary duty that was breached, the breach of fiduciary duty claim was "on a contract" and properly subject to an award of attorney fees. Id.

However, in each case applying the rule, the claim subject to fee shifting was grounded in a specific contractual undertaking derived from the contract furnishing the fee shifting provision. In Seattle First National Bank, 116 Wn.2d at 413, it was the insolvent insurer's promise to cover a risk within the guaranty association's ambit. In Brooks, 16 Wn. App. 2d at 446, Borish, 155 Wn. App. at 907, and Brown, 109 Wn. App. at 58-59, it was the agreement to convey the property as described in the seller's representations. And in Edmonds, 87 Wn. App. at 855, it was the agreement to provide representation which was the source of the fiduciary relationship. In contrast, we refused an attorney fee award, other than on contract related claims, in Tradewell Group, Inc. v. Mavis, 71 Wn. App. 120, 129-30, 857 P.2d 1053 (1993). In Tradewell, a commercial tenant invoked a fee shifting provision in its lease on tort claims that its landlord had interfered in its business dealings, and on a promissory estoppel claim that was an alternative

7

theory of liability premised on the absence of an express agreement. Id. We held these claims were not subject to the lease's fee shifting provision. Id. at 130; see also CPL (Delaware), LLC v. Conley, 110 Wn. App. 786, 789, 797-98, 40 P.3d 679 (2002) (Attorney fee provision for prevailing in actions " 'instituted to enforce or interpret any of the terms' " in purchase agreements was not triggered by action to invalidate a subsequent but related performance payout agreement).

This case is not directly analogous to any of the cited authorities, as there is no question that Ronsse sued on contractual promises, rather than tort claims. But Ronsse sued Price on promises he made in the business agreements, not the REPSAs. Ronsse's claims under the business agreements were not grounded in the promise to convey the real property or any other undertakings in the REPSAs, and Price does not show that deciding the merits of Ronsse's claims for breach of the business agreements required examination of the terms of the REPSAs.

We are also not persuaded that Ronsse and Price made what amounts to only one agreement. The provisions in the business agreement for Price to take over operations of the nursery and assume responsibility for certain expenses came into effect in January 2017. At that time, the parties had REPSAs in place to convey the four parcels, but those contracts were not performed. The parties formed new REPSAs, one in March 2017 to convey one parcel, and one in December 2017 to convey two parcels. The first business agreement recognized the parties' intent that Price assume operations of the nursery in anticipation of the real estate transfers, but it took effect before any real estate sales closed. And

only some of the provisions of the business agreements depended on the REPSAs closing.

We agree with the superior court that the business agreements were separate from the real estate contracts, and the REPSAs, together with their fee shifting provisions, did not reincorporate the business agreements as new unified contracts. While the transfer of nursery assets to Price was essential to the parties' ultimate goals, it was essential only to their goals as described in the business agreements, not the transfer of the real property under the REPSAs. The parties entered into different contracts: two REPSAs to convey three parcels subject to fee shifting, and two agreements for the operation of the nursery, not subject to fee shifting.

C

Price argues that Ronsse's allegations in her complaints were broad enough, under rules of notice pleading, to include a claim that Price breached the REPSAs by failing to close sooner and causing Ronsse to incur additional expenses. But Ronsse never asserted such a claim for relief, even supposing she could have based on a liberal reading of her complaint. As a result, Price did not incur attorney fees to defeat such a claim. Price incurred attorney fees only to defeat the six claims Ronsse presented, and those all stemmed from Price's promises in the business agreements and not the REPSAs.

D

Neither party seeks attorney fees on appeal, and accordingly neither is awarded fees. Ronsse shall recover her appellate costs.

Affirmed.

Birk, J.

WE CONCUR:

Bowman, J.          Mann, J.