**SECURITY TRUST & SAVINGS BANK,**
a corporation, Plaintiff,

v.

**FEDERAL RESERVE BANK OF MINNE-
APOLIS, a corporation, Defendant.**

Civ. A. No. 470.

United States District Court
D. Montana,
Billings Division.

June 19, 1967.

Crowley, Kilbourne, Haughey, Hanson
& Gallagher, Billings, Mont., for plain-
tiff.

Anderson, Symmes, Forbes, Peete &
Brown, Billings, Mont., for defendant.

OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

This case was by stipulation submitted
for decision upon the documents in the
court file.

· From the pleadings, stipulations,
depositions and affidavits on file it
appears without dispute that: North-
west Investors Service Inc. drew a check
on Security Trust & Savings Bank on
June 21, 1963, payable to the order of
Crow, Brourman & Chatkin, Pittsburgh
brokers, and mailed the check to the
payee. The payee deposited the check,
without endorsement of any kind, in the
Western Pennsylvania National Bank at
Pittsburgh, Pennsylvania (hereinafter
called Pennsylvania Bank) on June 24,
1963. On June 25, the Pennsylvania
Bank forwarded the check to the Pitts-
burgh Branch of the Federal Reserve
Bank of Cleveland endorsed "Pay to the
Order of Any Bank or Banker or any
Federal Reserve Bank. Prior Endorse-
ments guaranteed. Western Pennsyl-
vania National Bank Washington Trust
Office." The Cleveland Federal Reserve
Bank forwarded the check to the defend-
ant Minneapolis Federal Reserve Bank,
which in turn sent the check to the plain-
tiff. On June 26, 1963, plaintiff paid
the check by stamping it paid, and
charging it to the maker's account, and
placed it in the file with other checks of
the maker.

In paying the check, plaintiff was
acting under a mistake of fact. The
maker's account had an apparent balance
sufficient to cover the check when it
was first presented only because an un-
collected draft had been provisionally
credited to the account. Through a cleri-
cal error a "hold" which had been placed
on said account pending collection of the
draft was not fed to the computer and
the maker's check was therefore cleared

and paid on June 26. The error in paying the check was discovered upon return of the draft unpaid on July 19, 1963, and at the same time the plaintiff discovered the missing endorsement of the payee. On that date, therefore, plaintiff returned the check with a notation marked "endorsement missing" to defendant with the intention that it be returned to the Pennsylvania Bank. The check was sent with entry (meaning that plaintiff's account at the defendant would be credited with the amount of the check). Plaintiff's account with defendant was in fact credited with the amount of the check. Defendant returned it through the Federal Reserve System to the Pennsylvania Bank which received it on July 23, 1963, with entry. On the same day the Pennsylvania Bank stamped the check with the following endorsement: "Credited to the account of the within named payee in accordance with payee's instructions. Absence of endorsement guaranteed. Western Pennsylvania National Bank, Porter Building Office, Pittsburgh, Pennsylvania." The check was then returned through the Federal System to plaintiff and was received by plaintiff on July 29, 1963. On July 30, it was protested for non-payment and returned to the Pennsylvania Bank and through the Federal Reserve System with a notation attached indicating it was returned because of "nonsufficient funds and personal endorsement required." The Pennsylvania Bank received it on August 2, 1963, and on August 5 returned the check to the Pittsburgh Branch of the Federal Reserve Bank of Cleveland, after obtaining the payee's endorsement. The Pennsylvania Bank apparently accepted and returned said check in early August without entry. The check was returned through the Federal Reserve System to plaintiff on August 12, 1963, and on August 13 was returned by plaintiff to defendant marked "insufficient funds."

Prior to July 30, when the check was protested for insufficient funds, the maker advised the plaintiff that he had issued the check to the payee in payment for 1,000 shares of stock in Jerome, Richard & Co. Inc., a corporation, being purchased by the maker from another securities' firm, Frederick, Cirlin & Associates, but that the stock purchased had not been received by him. The maker had resold the securities to a broker in Iowa in turn, and had drawn the aforementioned draft on the Iowa broker against the delivery of the securities. Because Northwest Securities, the maker, did not receive the stock certificates from either Frederick, Cirlin & Associates or Crow, Brourman & Chatkin, he was unable to deliver them to the Iowa broker, who thereupon refused to honor the draft.

The Northwest Securities check was received by the Pennsylvania Bank with entry on August 16, 1963, and on the same day was charged to the payee's account and returned to the payee.

No immediate attempt was made by the Pennsylvania Bank to charge the check back to the Federal Reserve System. On or about August 26, the payee commenced suit against the Pennsylvania Bank for the amount of the check, and on August 27, the Pennsylvania Bank's attorney obtained the check from the payee and forwarded it to the Pittsburgh Branch of the Federal Reserve Bank of Cleveland with the demand that the Pennsylvania Bank's account be credited with the amount of it.

This demand was not transmitted to plaintiff, and neither the defendant nor any other Federal Reserve Bank communicated further with the plaintiff concerning this check until November, 1963, except that late in September an official of the defendant informed plaintiff that litigation had been commenced by the payee against the Pennsylvania Bank. On November 1, 1963, an officer of the defendant orally advised Mr. Jorgenson, Chairman of the Board of the plaintiff, that the check was being returned to plaintiff, and on November 2, Mr. Vaughan, plaintiff's Vice President, orally advised the General Counsel of the defendant that plaintiff was refusing to accept its return. The check was re-

ceived by defendant's Helena Branch on November 4, which charged it against plaintiff's account and advised plaintiff that in view of its refusal to accept the item, they would retain physical possession to avoid shuffling it back and forth, between plaintiff and defendant's Helena Branch.

The charging of this check to plaintiff's account has never been reversed, and plaintiff has commenced this action for the amount thereof, together with protest fees.

The regulations of the Federal Reserve System adopted by the Board of Governors, pursuant to Congressional authority,[1] insofar as pertinent here, provide, in substance, that any item forwarded to a drawee bank and by it paid, may be returned for credit prior to midnight of the following day.[2] Regulation J gives each Federal Reserve Bank power to promulgate rules governing details in the clearing and collection of checks.[3]

The Federal Reserve Bank of Minneapolis, by Operating Letter Number Five, provided that all banks sending items to the Federal Reserve Bank would be understood to have agreed to the terms of the operating letter and Regulation J.[4]

Section 11 of Operating Letter No. 5 provides, in part, as follows:

"Each bank returning cash items for credit or refund represents that such items are returned within the time allowed by paragraph (4) of Section 5 of Regulation J or the applicable law; and any refund, deduction or credit made, allowed or given by this bank for any item returned after the time allowed by Regulation J or the applicable law may be recovered or revoked if such late return is not

acquiesced in by our sending bank. A bank may, however, return to us without entry a cash item which it has failed to return in time, with a request that we ask our sending bank to make refund therefor; in which event we shall make refund to the returning bank and charge our sending bank only if the latter specifically authorizes us to do so."

Section 12 of the Operating Letter provides:

"The attention of sending banks is called to our 'Instructions to collecting and remitting banks' to the effect that, (a) each bank returning cash items for credit or refund represents that such items are returned within the time allowed by paragraph (4) of Section 5 of Regulation J or the applicable law; and (b) that any refund, deduction or credit made, allowed or given by this bank for any item returned after the time allowed by Regulation J or the applicable law may be recovered or revoked if such late return is not acquiesced in by our sending bank. We do not undertake to examine all returned cash items to confirm that such items are returned within the time permitted under the provisions of paragraph (4) of Section 5 of Regulation J or the applicable law."

Plaintiff urges under these facts and these regulations it was entitled to charge the check back, even though the time specified in Regulation J had elapsed, because the check had not been endorsed by the payee. It also urges that the acts of the Pennsylvania bank in charging its payee's account and in delaying the return of the item operates to make the defendant liable.

These contentions are without merit.

1. 12 U.S.C. § 248(j) and (o) and 342.

2. Regulation J, 12 CFR, § 210.5(d), in effect at the time of this dispute.

3. Regulation J, supra Footnote 2, § 210.6.

4. Section 2 of Operating Letter No. 5 provides, in part, as follows: "Every

bank sending cash items to us or to another Federal Reserve bank direct for our account, by such act, will be understood to have agreed to the terms and conditions of this Operating Letter, of our Time Schedules, and of Regulation J in effect at the time such cash items are received by the Federal Reserve bank."

If the lack of the payee's endorsement had in any way damaged the drawer or the drawee bank plaintiff would have had some rights, and perhaps as a matter of "applicable law" would have been entitled to a refund. The authorities cited by plaintiff are to this effect.[5] Here, however, the payee, the person, whom the maker intended to pay, received the money. The lack of payee's endorsement has caused no damage to anyone—the maker, the payee, or the drawee bank. Under these circumstances plaintiff may not use the lack of an endorsement as an excuse for returning a check which it has paid.[6]

It is possible that the delays in the Pittsburgh Branch of the Cleveland Federal Reserve Bank and the Pennsylvania bank after July 20th may have caused plaintiff some damage, although that is speculative on the record here. It does not follow, however, that the defendant is responsible. The rules heretofore noted contemplate that an item be returned the next day for credit and if it is returned later that it be returned without entry; that is, as an item which changes the account of neither the drawee bank or the Federal Reserve System. The check here was sent as a cash item. Plaintiff was advised that the Federal Reserve Bank would, without checking the time, credit its account. Had the plaintiff followed the rules it would not have received credit for the returned item on the defendant's books on July 19 or 20. Had the plaintiff returned the check as a non-entry item the defendant would have sent it up the line and made a refund to the plaintiff only if the sending bank had authorized it to do so. When on November 4, 1963, defendant finally charged plaintiff's account with the amount of the check it was only recouping the money which should never have left the defendant's account, and would not have left the defendant's account except for the plaintiff's representation (by the inclusion of the check in the cash letter) that the check was returned within the time provided by Regulation J. The rights are as though the credit had not been given to plaintiff and the money at all times retained in the defendant's account. By hiding this item in the cash letter plaintiff could not increase its rights nor enlarge the defendant's responsibility. Defendant's duty when the check was returned late was to refund if it had the acquiescence of the sending bank. It had no duty to force that acquiescence, nor were there time limits within which it was required to act. Because the defendant had no duty to the plaintiff to collect the check it was not liable for any of the delays or mistakes which may have been made by other Federal Reserve Banks or by the Pennsylvania Bank. It is not claimed that the defendant itself was guilty of any delay.

This opinion constitutes the findings of fact and conclusions of law of this court.

It is directed that the plaintiff be denied all relief.

5. American National Bank v. First National Bank, 130 Colo. 557, 277 P.2d 951 (1954), where one of two joint payees did not endorse and did not receive any of the proceeds of the check; United States Fidelity and Guaranty Co. v. Peoples National Bank, 24 Ill.App.2d 275, 164 N.E. 2d 497 (1960), where the drawee—drawee of a draft was actually damaged because the draft was paid without the endorsement of two of the three payees; Roswell Bank v. Citizens & Southern DeKalb Bank, 104 Ga.App. 291, 121 S.E.2d 706 (1961), another case involving the failure of one of two joint payees to endorse in which the drawee bank did pay the maker because of the lack of endorsement.

6. Gilbert v. Chase National Bank, S.D. N.Y.1952, 108 F.Supp. 229, indicates that the maker cannot recover under these circumstances, and if the maker cannot it is difficult to see why the drawee bank should.