**NORTHPARK NATIONAL BANK, Plaintiff,**

v.

**BANKERS TRUST CO., Federal Reserve Bank of New York and Federal Reserve Bank of Chicago, Defendants.**

No. 82 Civ. 7417 (WK).

United States District Court, S.D. New York.

Sept. 26, 1983.

Hart & Hume, Mark Gamell and Benjamin D. Lentz, New York City, for plaintiff.

Thomas C. Baxter, Jr., New York City, for defendant Federal Reserve of New York.

Oliver Ireland, New York City, for defendant Federal Reserve Bank of Chicago.

## MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

### BACKGROUND

Plaintiff is a Dallas bank which was defrauded by one of its customers (not a party to this action) to the tune of some $60,000. The fraud was accomplished by causing a check deposited for collection to take an anfractuous route towards the bank on which the check had, ostensibly, been drawn, and withdrawing the check's proceeds before notice of nonpayment had been received by plaintiff bank. The check's misrouting was, in turn, accomplished by carefully imprinting the check with deceptive routing symbols. Plaintiff seeks to recover from several banks which handled the fraudulent check in the collection process on allegations that, in handling the item, they violated various provisions of the Uniform Commercial Code. The case is before us on defendant Federal Reserve Bank of Chicago's (FRBC) motion to dismiss for lack of personal jurisdiction and on defendant Federal Reserve Bank of New York's (FRBNY) motion to dismiss for failure to state a cause of action. This opinion deals solely with the jurisdictional motion by the FRBC and will, accordingly, present only the facts germane to such application.

For a fuller description of the fraud involved and of the substance of plaintiff's claims we refer to our separate opinion addressing the FRBNY's motion, confirming the legal viability of certain claims against the FRBNY. *See* 572 F.Supp. 524.

## DISCUSSION

Extensive discovery establishes[1] that the FRBC has two main[2] categories of contacts with New York: (a) those stemming from the operations of the Federal Open-Market Committee (FOMC)[3], and (b) those stemming from check processing operations.

As to the first category, plaintiff contends, in substance, that the FRBC is "present" in New York for jurisdictional purposes because the FRBNY—through its trading desk—acts as agent for the purchase and sale of securities in the Open Market Account, an investment pool in which the FRBC owns a substantial share.

Indeed, the FRBC's most important asset is its share of the Open Market Account—in excess of $20 billion. Moreover, the FRBC's largest source of earnings—more than $2 billion in 1981—is the interest on securities held in that system-wide pool. As concerns the contacts stemming from check processing activities, plaintiff contends that—inasmuch as the FRBC derived some $1.2 million in 1982 from fees for processing checks sent to it by New York banks, either directly or through the FRBNY—the FRBC must be deemed, on this ground also, to be present in New York for jurisdictional purposes.[4] We disagree.

Were the issue before us merely whether the *extent* of the contacts justifies the assertion of personal jurisdiction, we would not hesitate to hold the FRBC amenable to personal jurisdiction in New York under any standard, no matter how restrictive.[5]

1. There is no real disagreement about the factual fruits of discovery; there is, of course, vigorous disagreement concerning their jurisdictional implications.

2. Discovery has established other contacts—execution of wire transfers, contracting for a system-wide courier service, mailing publications into New York, and sending employees into New York to attend professional conferences and meetings. We regard them—individually and collectively—as being of no jurisdictional moment.

3. We will assume familiarity with the basic legal, technical, and institutional background of monetary policy in general and of the process of reserve creation in particular. *See, generally, Federal Open Market Committee v. Merrill* (1979) 443 U.S. 340, 342–47 [99 S.Ct. 2800, 2803–2805, 61 L.Ed.2d 587]; 12 U.S.C. § 263 (creating the FOMC); Board of Gov. of the Fed.Res.Syst., The Federal Reserve System, Purposes and Functions, Chs. 3–4 (1974); P. Horvitz, Monetary Policy and the Financial System, Ch. 20 (1969); L. Ritter & W. Silber, Principles of Money, Banking & Financial Markets, Ch. 3 (1974).

4. The FRBC has argued that, in regard to checks which New York banks send to it for collection, it acts as the agent of the FRBNY, *see* 12 C.F.R. § 210.6(a)(1) (1982), and cannot therefore be deemed to be present in New York. In light of our ruling we need not consider who is acting as agent for whom and will,

accordingly, regard (for purposes of this ruling) the revenues from check processing as having been generated by "New York-related" activities.

5. Inasmuch as New York has not chosen to extend its jurisdictional reach over nondomiciliaries to the limits allowed by the Federal Constitution, *see, e.g., Marantis v. Dolphin Aviation* (S.D.N.Y.1978) 453 F.Supp. 803, 807; *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.* (1965) 15 N.Y.2d 443, 459–60, 261 N.Y.S.2d 8, 20–21 [209 N.E.2d 68, 76–77], the parties have vigorously disputed whether amenability to *in personam* jurisdiction—in a case which comes before us as a "federal question," *see* 12 U.S.C. § 632—should be tested against the federal or the (stricter) state standard. *See, e.g., PPS, Inc. v. Jewelry Sales Reps., Inc.* (S.D.N.Y.1975) 392 F.Supp. 375, 379; 2 Moore's Federal Practice ¶ 4.25[7] (1982). We need not reach that issue. Our ruling concerning the inadequacy of the contacts with New York turns on their *character*, not their extent. Although their extent would surely suffice for jurisdiction under any standard, their character makes them inappropriate as predicates of personal jurisdiction even under the (broader) federal standard. As they fail the federal test, they would also be insufficient to satisfy the requirements of a state's long-arm statute. *See, generally,* 2 Moore's Federal Practice ¶ 4.41–1[1] at 421–22 (1982) (two-step test under long-arm statutes that are not co-extensive with the federal standard). Thus, this

We are persuaded, however, that the *character* of the FRBC's relations with New York requires us to exclude them from the calculus of minimum contacts that make it "fair and reasonable to compel the defendant to try the action in the forum state," *Intermeat, Inc. v. American Poultry, Inc.* (2d Cir.1978) 575 F.2d 1017, 1023.

It is, by now, axiomatic that the due process test "cannot be formularized." *Id.* "Rather, as Judge Hand suggested, such a test leaves the court to 'step from tuft to tuft across the morass,' *Hutchinson v. Chase & Gilbert* [ (2d Cir.1930) ] 45 F.2d [139] at 142, in deciding each case..." *Id.* *See also Shaffer v. Heitner* (1977) 433 U.S. 186, 204, 97 S.Ct. 2569, 2579–2580, 53 L.Ed.2d 683 (suggesting that mechanical or quantitative evaluations are not dispositive; must consider the relationship among defendant, forum, and litigation); *International Shoe v. Washington* (1945) 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95. A distinguished treatise on federal practice concedes itself unable—within the space limitations of a multi-volume work—to analyze the myriad cases which have explicated the basic due process requirement, *see* 2 Moore's Federal Practice ¶ 4.41–1[3] at 451 (1982), and we will not attempt such effort. We observe, however, that the guiding principles of *International Shoe, supra,* apply as forcefully to corporations as they do to individuals. *See Shaffer v. Heitner, supra,* 433 U.S. at 204 n. 19, 97 S.Ct. at 2579 n. 19. Moreover, the indispensable leavening ingredient which allows contacts to rise above the constitutionality required minimum, is that they be the product of some affirma-

tive and voluntary act by the defendant. *See* 2 Moore's Federal Practice ¶ 4.25[5] at 257–69 (1982); *id.* ¶ 4.41–1[3] at 446; *Hanson v. Denckla* (1958) 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283; *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 294–96, 100 S.Ct. 559, 565–566, 62 L.Ed.2d 490; *Rush v. Savchuk* (1980) 444 U.S. 320, 328–29, 100 S.Ct. 571, 577–578, 62 L.Ed.2d 516.[6]

With the foregoing in mind, we are compelled to disregard the contacts which plaintiff proposes as a basis for personal jurisdiction over the FRBC. The conduct of monetary policy is a quintessential government function, and the Open Market Account is an indispensable instrument in the conduct of such policy. *See* sources cited in note 3, *above.* The FRBC certainly has no choice whether or not (or where) to participate in open market transactions, *see* 12 U.S.C. § 263(b), and it has no control of the operations of the account. *Id.* It cannot be said, therefore, that the FRBC controls—in any plausible sense—the activities of its purported New York agent.

The funds generated by check processing—even if deemed to have been generated by New York-related activities, *see* note 4, *above*—are, likewise not the result of any deliberate or purposeful act by the FRBC. In 1978 when this action arose, check processing services were rendered gratis to all members of the Federal Reserve System.[7] By the time the complaint was filed, however, the member banks had been required—by the Monetary Control

---

case does not, in our view, present that "middle ground" of contacts sufficient to satisfy federal principles but insufficient to comply with state standards. Only in that situation would the choice of a standard be relevant.

**6.** Although they do not couch them in constitutional terms, we note that courts have developed a disparate set of jurisdiction-defeating doctrines to relieve defendants of the "unfairness" of being subject to personal jurisdiction when their "presence" in a jurisdiction does not have all the earmarks of an affirmative act, voluntarily engaged in by the affected defendant. *See, e.g., Marine Midland Bank v. Miller* (2d Cir.1981) 664 F.2d 899, 903 ("fiduciary-

shield" doctrine); *Investment Co. Institute v. United States* (D.D.C.1982) 550 F.Supp. 1213, 1215–17 ("government contacts" doctrine); 2 Moore's Federal Practice ¶ 4.20 (1982) (party/witness/attorney immunity).

**7.** Accepting the proposition that the reference point for determining "presence" in New York is the time of commencement of the action—in our case 1982—*see Top Form Mills v. Sociedad Nationale* (S.D.N.Y.1977) 428 F.Supp. 1237, 1246 n. 12, the pricing of the service (which is the basis of the claim that the FRBC is now present in New York) before the action started is relevant to the characterization of the current nature of that service.

Act of 1980—to render such services to all banks in the United States at a schedule of fees to be established by the Federal Reserve Board. *See* 12 U.S.C. § 248a. It is clear that such fees were intended as no more than a rationing mechanism to cover the costs of a statutorily mandated activity. H.Conf.Rep. No. 842, 96th Cong., 2d Sess. 71, *reprinted in* 1980 U.S.Code Cong. & Ad. News 236, 301. The assertion of jurisdiction on the basis of fees for a service over which the FRBC has no control does not comport with notions of substantial justice.

Even as concerns the FRBC's "profits," it would be misleading, in our view, to analogize them—for jurisdictional purposes—with such measures of "forum-based results" which would have supported jurisdiction were the defendant a private corporation. It was not disputed in oral argument that—except for deductions for minimal statutory dividends and for the funding of its own operations—"profits" are eventually remitted to the United States Treasury. *See, e.g.,* 12 U.S.C. §§ 243, 248a(d), 289, 290. Particularly in regard to the "profits" due to the operations of the Open Market Account, such "profits" appear, therefore, to be no more than intragovernmental bookkeeping entries over which the FRBC has no substantial control.

Based on the foregoing we cannot say that "fair play," *see Shaffer v. Heitner,* *supra,* 433 U.S. at 186, 97 S.Ct. at 2569, allows a Texas plaintiff to force an Illinois defendant to play this legal game in a New York court.[8] Accordingly, defendant FRBC's motion to dismiss for lack of personal jurisdiction is granted.[9]

## CERTIFICATE FOR THE IMMEDIATE ENTRY OF JUDGMENT

The standards for a Rule 54(b) certification are stringent in this Circuit. *See El-Marzouki Establishment v. Environmental Research & Dev.* (S.D.N.Y.1982) 93 F.R.D. 661 (citing cases). However, in this case the certification, in our view, is warranted. The ruling eliminates the FRBC from this action, *see id.* at 662 n. 1, and the question which the opinion addresses is wholly divorced from the rest of the case. Accordingly, an immediate appeal would not constitute a duplication of appellate judicial effort. Moreover, any record which might be developed in the continuing action against the co-defendant FRBNY could be of no possible aid to the Court of Appeals in determining whether or not the instant decision is correct. Conversely, however, should the Court of Appeals reverse our jurisdictional ruling, the appellate opinion would in all probability be rendered in time to allow the trial on the merits to proceed against all co-defendants simultaneously, thus sparing the trial court and the parties

---

**8.** The parties have put before us only the question whether there are sufficient contacts—under federal or state standards—to sustain jurisdiction. Defendant FRBC has not called our attention to any venue provision which would prevent us, on *statutory* grounds, from entertaining the action against it. We therefore make no ruling as to venue. We note, however, that plaintiff has cited no case against a Federal Reserve Bank in which the defendant was subjected to foreign jurisdiction. Our own limited research has uncovered only two. *See Farmers' and Merchants' Bank of Catlettsburg, Ky. v. F.R.B. of Cleveland* (E.D.Ky.1922) 286 F. 566; *Security T. & S. Bank v. F.R.B. of Minneapolis* (E.D.Mont.1967) 269 F.Supp. 893 (no discussion of jurisdictional issue).

**9.** A contrary ruling would raise disturbing implications. Were the FRBC subject to jurisdiction in this Court on account of the profits from the Open Market Account, it would likely imply that *all* Federal Reserve Banks will be held accountable before this Court—all Federal Reserve Banks, after all, share in that account. Moreover, if the FRBC were subject to jurisdiction on the basis of the revenues generated by the check processing operations, this might well imply that every Federal Reserve Bank will be suable anywhere in the country. The check processing network extends from every Federal Reserve Bank to every other, and vice-versa. That may, of course, be a substantively desirable result on the argument that a suit against one of the Federal Reserve Banks is, in fact, a suit against the "local branch" of *one* national Central Bank—the Federal Reserve System. However, so long as the various Federal Reserve Banks continue to enjoy separate corporate identity, *see* 12 U.S.C. § 341, such result would, in our view, run afoul of the limiting principles of federal jurisdiction.

the investment of resources in a substantially duplicative trial.

There being, therefore, no "just reason for delay," the Clerk is ordered to enter immediate judgment dismissing the complaint against defendant Federal Reserve Bank of Chicago for lack of personal jurisdiction.

SO ORDERED.