**WASHINGTON INSURANCE GUARANTY ASSOCIATION, Appellant,**

v.

**Michele RAMSEY, Appellee.**

**No. S-6272.**

Supreme Court of Alaska.

Aug. 16, 1996.

Andrew W. Torrance, Lundberg, Kristof, Klug & Torrance, Seattle, WA, and Arnold J. Barer, Seattle, WA, for Appellant.

Paul F. Cronin, Juneau, for Appellee.

Before RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

### I. .INTRODUCTION

This appeal arises out of an action brought by Michele Ramsey against the Washington Insurance Guaranty Association (WIGA). A jury awarded Ramsey $200,000 after finding that WIGA had violated its duty to reasonably settle an underlying personal injury action. In this appeal, WIGA argues that the superior court improperly determined that it had personal jurisdiction over WIGA. WIGA also contends that it is statutorily immune from an action for refusal to settle. WIGA further contends that because it did not violate any duty it owed to its insureds, and because there was no adverse judgment, as a matter of law WIGA was not liable under the covenant settlement which Ramsey entered into with the insureds. Finally, WIGA argues that the superior court erred in denying its motions for a directed verdict and judgment n.o.v. because there was no reasonable evidentiary basis for determining that the claim was worth $200,000. We affirm the superior court on all counts.

### II. FACTS & PROCEEDINGS

The underlying action in this case was a negligence claim filed by Michele Ramsey against Paul Ursino and his employer Frank Coluccio Construction Company (Coluccio). Ramsey was working as a flag person at a construction site in Juneau. Ursino, who was working as a foreman on an unrelated construction project, drove to the Juneau site in a pickup truck owned by Coluccio to borrow some equipment. As Ursino approached, Ramsey tried to stop him. A dispute ensued during the course of which Ursino slowly drove into Ramsey, bumping her several times. Ramsey alleged that as a result she sustained knee injuries and emotional distress. Ramsey's claim against Coluccio was based on a theory of respondeat superior as well as independent negligence.[1]

---

1. According to the complaint, Coluccio negligently entrusted its motor vehicle to Ursino, allowing him to drive when it knew or reasonably

Ramsey sought both compensatory and punitive damages.

Coluccio was insured by Pacific Marine Insurance Co. (PACMAR), a Washington insurance company. On June 7, 1989, PACMAR was adjudged insolvent and WIGA stepped in to handle all claims against PACMAR. WIGA is a nonprofit unincorporated statutory entity established to "avoid financial loss to claimants or policyholders because of the insolvency of an insurer[.]"[2] WIGA functions to pool the risk of an insurer's insolvency by requiring each insurer licensed in the State of Washington to contribute to a fund an amount proportionate to its share of the total insurance premiums written in Washington during the preceding calendar year.[3] WIGA is authorized to handle any claims filed against insolvent insurers, up to the statutory limit of $300,000.[4] In carrying out this function WIGA is given broad authority to defend any action on a claim brought against the association,[5] as well as to "adjust, compromise, settle, and pay covered claims to the extent of the association's obligation[.]"[6] WIGA is governed by a Board of Directors, selected by the association members.[7] However, its claims processing is generally handled through designated claims servicing facilities. Robert Lander, an independent contractor, was retained by WIGA as a "claims manager" and eventually oversaw the Ramsey claim.

WIGA undertook defense of the action, replacing the attorneys hired by Coluccio. Lander retained Tom Findley as counsel for Ursino and Charles Drennan as counsel for Coluccio.

The case proceeded to trial in the superior court in Juneau. Immediately before and throughout the course of the trial the various parties attempted to settle the action. During this period Ramsey offered to settle the case for $200,000.[8] In the midst of the trial,

on November 9, Ramsey asked Superior Court Judge Carpeneti to intercede in the settlement negotiations. The parties' attorneys conferred with Judge Carpeneti. Both Drennan and Findley advised Lander to take the offer. Judge Carpeneti's assessment was that the case could end in a wide range of results but that as an estimate he would value the case at $175,000. At the close of the conference Lander deferred making any decision on the offer.

With WIGA refusing to settle, Coluccio and Ursino accepted an offer from Ramsey to enter into a consent judgment for $300,000, the maximum claim allowed under the WIGA statute. The settlement agreement included a covenant not to enforce the judgment against the parties personally. In exchange, Ursino and Coluccio assigned any claim they had against WIGA to Ramsey. This settlement ended the underlying litigation without a jury verdict and formed the basis for the present action.

Ramsey then filed a complaint against WIGA seeking payment of the $300,000 judgment as a covered claim. WIGA first filed an answer alleging *inter alia* that the Alaska courts lacked personal jurisdiction over it. The superior court held a hearing on this issue and ultimately denied WIGA's motion to dismiss for lack of personal jurisdiction. WIGA next filed a motion for summary judgment arguing that it had statutory immunity from any claim arising from its refusal to settle. The superior court denied this motion as well. It held that WIGA had a statutory duty to accept a reasonable settlement offer and therefore that this action did not fall within the ambit of WIGA's statutory immunity from all tort or contract actions.

The matter proceeded to trial, at the conclusion of which the jury found that WIGA had unreasonably refused to settle the case for $200,000, and therefore had violated its

should have known he was under a great deal of stress.

2. Wash. Rev.Code (RCW) § 48.32.010 (1994).

3. RCW 48.32.060(1)(c).

4. RCW 48.32.060(1)(a)-(b).

5. RCW 48.32.060(2)(a).

6. RCW 48.32.060(1)(d).

7. RCW 48.32.050.

8. WIGA apparently authorized Lander to settle the case for up to $100,000.

statutory duty. The superior court denied a motion for judgment notwithstanding the verdict and entered final judgment. WIGA now appeals.

## III. *DISCUSSION*

### A. *Did the Superior Court Properly Determine That it Had Personal Jurisdiction Over WIGA*

■ In Alaska, personal jurisdiction over a non-resident defendant is conferred by our long-arm statute.[9] "We have construed this statute to extend Alaska's jurisdiction to the maximum reach consistent with the guarantees of due process under the Fourteenth Amendment." *Volkswagenwerk, A.G. v. Klippan, GmbH*, 611 P.2d 498, 500 (Alaska 1980), *cert. denied*, 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980). Thus, the dispositive question is whether assertion of jurisdiction under our long-arm statute in the instant case would violate WIGA's constitutional right to due process.[10]

Ramsey makes two arguments that jurisdiction was proper in this case. First, she argues that WIGA's activities with regard to the underlying suit established sufficient "minimum contacts" in Alaska to make it reasonably foreseeable that it would be haled into court in this state. Second, she argues that WIGA stepped into the shoes of an insolvent insurance carrier which had sufficient contacts with Alaska,[11] and that therefore jurisdiction may be conferred on WIGA as a successor in the litigation.

In order to pass constitutional muster, the acts of the nonresident defendant must establish sufficient "minimum contacts" with the forum state, such that maintaining a suit there "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). As the superior court correctly noted,

> In determining if minimum contacts exist, due process requires that the defendant have fair warning that particular activities may foreseeably subject them to jurisdiction in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). "The foreseeability that is critical in an analysis of minimum contacts is whether 'the defendant's conduct and connection with the forum State are such that he could reasonably anticipate being haled into court there.'" *Olivier v. Merritt Dredging Co., Inc.*, 954 F.2d 1553, 1558 (11th Cir.1992) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). To reasonably anticipate being haled into court, the defendant must have purposefully conducted activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

Thus, the inquiry must focus on the nature of the defendant's contacts with the forum.

A number of other courts have addressed the issue of whether personal jurisdiction may be established over an out-of-state guaranty association. These courts are split as to whether personal jurisdiction may properly be maintained. Those that have decided that jurisdiction was constitutional have generally focused on the foreseeability to the guarantor that a covered claim might arise in the forum jurisdiction, when the insurers which they are guaranteeing insure risks in the forum state.[12] Alternatively, the South Carolina

---

9. AS 09.05.015.

10. The determination of whether the exercise of personal jurisdiction over a defendant violates the defendant's right to due process is a constitutional question which we review employing an independent judgment standard of review. *See Arco Alaska, Inc. v. State*, 824 P.2d 708, 710 (Alaska 1992).

11. The United States Supreme Court held in *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957), that the assumption of insurance obligations in the forum state was sufficient to establish personal jurisdiction.

12. *See Olivier v. Merritt Dredging Co.*, 979 F.2d 827, 832 (11th Cir.1992), *cert. denied sub nom. South Carolina Property and Casualty Ins. Guar. Ass'n v. Olivier*, 507 U.S. 983, 113 S.Ct. 1577, 123 L.Ed.2d 145 (1993) and *Louisiana Ins. Guar. Ass'n v. Olivier*, 508 U.S. 910, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993).

Supreme Court relied on the idea that the guaranty association was the "alter-ego" of the insolvent insurance company. *Bell v. Senn Trucking Co.*, 308 S.C. 364, 418 S.E.2d 310, 312 (1992). That court focused on specific statutory language in the Georgia statutes which states that the Georgia Pool is "deemed to be the insurer for such period with respect [to] and to the extent of the claims with all the rights, duties, and obligations of the insolvent insurer...."[13]

The courts which have found that jurisdiction would violate due process, on the other hand, state that jurisdiction over the guaranty association must be determined independently of the insurer.[14] They note that the obligations of the guaranty association generally are not coextensive with those of the insurer because of limitations on the amount and type of claims which are covered. Thus, these courts conclude that the fund cannot be said to stand in the insurer's shoes, *Pennsylvania Life & Health Ins. Guar. Ass'n v. Superior Court*, 22 Cal.App.4th 477, 27 Cal. Rptr.2d 507, 513 (1994), and that any obligation which arises in the forum state is solely a result of the guaranty association's statutory duty, rather than any action which it took in the forum state. Nor can the association be said to have derived an economic benefit from its connections with the forum state. Therefore there is no independent basis for establishing jurisdiction. *See Pennsylvania Life*, 27 Cal.Rptr.2d at 513. Finally, these courts also reason that these funds have an important social purpose which might be undermined if they are required to bear the expense of litigating in multiple jurisdictions. *Id.* at 515; *Brewer*, 602 So.2d at 1269.

In ruling on this issue, the superior court determined that this case did not "require[ ] the type of close analysis other courts have had to perform." The superior court distinguished the present case because WIGA had taken numerous actions in Alaska with regard to the underlying action. The superior court explained:

WIGA wrote letters and telephoned Ramsey's attorney about her claim and the pending lawsuit; WIGA hired attorneys to defend the Ramsey claim and to represent the insureds; WIGA authorized offers of judgment to settle Ramsey's claim; WIGA maintained contact with the insureds attorneys and it advised the attorneys on aspects of the settlement negotiations; WIGA took part in the settlement conference, moved to intervene and stated its objections to the proposed settlement on the record. These contacts are not "minimum". WIGA came to this jurisdiction to defend a claim and it would be unreasonable to think that it would not be called back into court concerning the Ramsey judgment.

In contrast, in each of the other cases cited by the parties, the guaranty association raised the personal jurisdiction issue at the outset of their proceedings in the forum state.

WIGA responds to this line of reasoning by arguing that it was required by statute to engage in these activities and thus it did not undertake "deliberate and purposeful acts by which the defendant is considered to have availed itself of the forum state's law." WIGA cites *Northpark Nat'l Bank v. Bankers Trust Co.*, 572 F.Supp. 520 (S.D.N.Y. 1983), where a federal court held that check clearing activities performed by the Federal Reserve Bank of Chicago for New York banks could not be used to establish personal jurisdiction in New York. Despite the fact that the FRBC derived more than $1.2 million in fees from performing this activity, it was statutorily required to perform this function, and the fees which were charged were intended solely to cover the costs of this service. The court therefore concluded that it was not the type of "affirmative and voluntary act" which was necessary to establish jurisdiction. *Id.* at 522–23. Similarly, in the present case, although the actions taken by WIGA in Alaska may have been sufficient quantitatively, WIGA argues that they are not of the character necessary to establish minimum contacts. WIGA was merely engaging in its statutory duty to defend the

---

13. Ga.Code. Ann. § 33–36–9 (1990) (*quoted in Bell*, 418 S.E.2d at 312).

14. *See Georgia Insurers Insolvency Pool v. Brewer*, 602 So.2d 1264, 1267 (Fla.1992).

underlying suit brought by Ramsey, and it derived no economic benefit from its actions in the forum.

We conclude that the superior court properly exercised personal jurisdiction over WIGA. Numerous courts have held that the act of guaranteeing an obligation in the forum state alone is a sufficient contact to establish jurisdiction.[15] Further, study of the Washington statute persuades us that this was a "covered claim," [16] and that the premium paid by Coluccio on his insurance policy—which covered out-of-state risks—was included in determining PACMAR's contribution to the guaranty fund.[17] It is therefore foreseeable that these contacts could result in an actionable claim arising in another state. Although WIGA's obligations are statutorily created, where the statute commands that contacts be established with the forum state, and those contacts result in an actionable claim, personal jurisdiction is proper.[18]

Nor did the superior court err in determining that the establishment of jurisdiction comports with "fair play and substantial justice." We have stated that

[i]n making this determination, we are called upon to evaluate the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolu-

tion of controversies, and the shared interest of the states in furthering fundamental substantive social policies.

*American Nat'l Bank v. International Seafoods*, 735 P.2d 747 (Alaska 1987). WIGA argues that assertion of jurisdiction by the courts of Alaska would unnecessarily tax WIGA's resources and would therefore undermine the statutory purpose of protecting insureds and claimants in the State of Washington. We think this argument is unpersuasive. First, if there were no personal jurisdiction in Alaska, nothing would prevent Ramsey from bringing a similar claim in Washington. Thus, WIGA would bear the expense of litigation anyway. Second, WIGA presented no evidence that its potential exposure in other jurisdictions is excessively large, or that its purpose is in any way threatened by being forced to litigate in other jurisdictions. Finally, as the superior court noted, any additional costs could be effectively passed on to the insurance companies and their consumers through increased assessments. We conclude that the superior court of Alaska's exercise of personal jurisdiction over WIGA does not violate WIGA's due process rights.

B. *Was WIGA Immune From Suit for Failure to Settle Ramsey's Claim?* [19]

The Washington Insurance Guaranty Association Act has a general immunity provision, RCW 48.32.150, which states:

---

**15.** *See National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1137 (6th Cir.1982); *Marathon Metallic Bldg. Co. v. Mountain Empire Constr. Co.*, 653 F.2d 921, 923 (5th Cir.1981); *Forsythe v. Overmyer*, 576 F.2d 779, 784 (9th Cir.1978), *cert. denied* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978).

**16.** RCW 48.32.030(4) defines a "covered claim" as "an unpaid claim ... which arises out of and is within the coverage of an insurance policy to which this chapter applies by an insurer, if such insurer becomes an insolvent insurer ... and ... the claimant *or insured* is a resident of this state at the time of the insured event...." (Emphasis added.)

**17.** RCW 48.32.060(1)(c). Although WIGA did not benefit in the sense that it earned a greater profit due to its assessment on out-of-state risks, the fund nonetheless increases due to the out-of-state activities of its member insurers.

**18.** We distinguish cases such as *Northpark National Bank* where the statutory conduct which is relied upon to attempt to establish jurisdiction is unrelated to the conduct which causes the injury.

**19.** Resolution of this issue requires us to interpret the Washington Insurance Guaranty Association Act. Statutory interpretation is a question of law to which we apply our independent judgment. *Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 631 n. 8 (Alaska 1993). Normally when considering questions of law, we are "not bound by the lower court's decision" and will "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979). However, since we are interpreting the law of another state, we look to that state's precedent before we turn to reason and policy. We also note that the Washington Supreme Court applies *de novo* review to questions of statutory interpretation. *Stuckey v. Department of Labor and Indus.*, 129 Wash.2d 289, 916 P.2d 399 (1996).

There shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer, the association or its agents or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this chapter.

WIGA argues that this language immunizes it from a claim for refusal to settle.[20]

RCW 48.32 is based on the Post–Assessment Property and Liability Insurance Guaranty Association Model Act, which was drafted by the National Association of Insurance Commissioners, and adopted in the vast majority of states.[21] Washington adopted the statute in 1971. RCW 48.32.010. The operative language of section 48.32.150 is identical to the language in the model act.

In our view, the plain meanings of the immunity provision of the statute and other provisions of the statute refute WIGA's argument. The immunity provision states in relevant part:

There shall be no liability on the part of and no cause of action of any nature shall arise against ... the association ... for any action taken ... in the performance of [its] powers and duties under this chapter.

This language simply states that WIGA can not be held liable for any actions it takes in accordance with its duties. The language necessarily implies that WIGA can be held liable for actions it takes which are not within its duties. It follows that if it is within WIGA's duties to reasonably settle claims, and WIGA refuses to reasonably settle a claim, such a refusal is not in accordance with WIGA's statutory duties, and therefore

WIGA cannot claim immunity from liability based on that refusal.

Furthermore, in our opinion, the Washington Insurance Guaranty Association Act does impose a statutory duty on WIGA to reasonably settle claims. The act states that "[t]he association shall ... [b]e obligated to the extent of the covered claims...." RCW 48.32.060(1)(a). The act defines a "covered claim" as

an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer....

RCW 48.32.030(4). It is well established in Washington that insurers do have the duty to accept reasonable settlements. *Tank v. State Farm Fire & Casualty Co.*, 105 Wash.2d 381, 715 P.2d 1133, 1136–37 (1986); *Murray v. Mossman*, 56 Wash.2d 909, 355 P.2d 985, 987 (1960); *Evans v. Continental Casualty Co.*, 40 Wash.2d 614, 245 P.2d 470, 478–80 (1952); *Burnham v. Commercial Casualty Ins. Co.*, 10 Wash.2d 624, 117 P.2d 644, 648 (1944). It follows that such a duty "arises out of and is within the coverage of an insurance policy" within the meaning of RCW 48.32.030(4), and that WIGA has a duty to reasonably settle covered claims.[22]

WIGA claimed at oral argument that it would undeniably have an obligation to indemnify and defend covered claims, and that it could be sued, in spite of the immunity provision, if it abdicated those obligations, but that this does not apply to the duty to reasonably settle claims. We cannot discern any meaningful distinction between these two duties and the duty to reasonably settle claims. Each of the duties "arises out of and

---

**20.** Professor Keeton has articulated the insurer's duty to settle as follows:

With respect to the decision whether to settle or try the case, the insurance company must in good faith view the situation as it would if there were no policy limit applicable to the claim.... The insurer is negligent in failing to settle if, but only if, such ordinarily prudent insurer would consider that choosing to try the case (rather than to settle on the terms by which the claim could be settled) would be taking an unreasonable risk—that is, trial would involve chances of unfavorable results

out of reasonable proportion to the chances of favorable results.
Robert E. Keeton, *Basic Text on Insurance Law* 511 (1971).

**21.** Paul G. Roberts, *Insurance Company Insolvencies and Insurance Guaranty Funds: A Look at the Nonduplication of Recovery Clause*, 74 Iowa L.Rev. 927, 934 (1989); Bernard E. Epton and Roger A. Bixby, *Insurance Guaranty Funds: A Reassessment*, 25 DePaul L.Rev. 227, 230 (1976).

**22.** WIGA does not assert that the claim in the case at bar is uncovered.

is within the coverage of an insurance policy" within the terms of RCW 48.32.030(4). Any action taken by WIGA in violation of those duties is not an action taken pursuant to statutory authority, and therefore does not warrant immunity.

This conclusion is supported by the Washington Supreme Court's decision in *Seattle First Nat'l Bank v. Washington Ins. Guar. Assoc.*, 116 Wash.2d 398, 804 P.2d 1263 (1991). There, the insured bought a novel form of insurance from an insurer that subsequently was declared insolvent. When the insured attempted to recover from WIGA, WIGA claimed that RCW 48.32 prohibited recovery for the type of insurance in question. The Washington Supreme Court disagreed, and ordered WIGA to pay for the claim, as well as some attorney fees and costs. Thus, the resolution of the *Seattle First National Bank* case clearly indicates that WIGA does not enjoy total immunity from suits by insureds.[23] Interestingly, the Washington Supreme Court did not address the immunity provision in resolving that case. Thus, whatever the reach of the immunity provision of the statute, its scope did not preclude the claim asserted in *Seattle First National Bank*.

*Seattle First National Bank*, at its core, involved an insured suing WIGA for recovery on an insurance policy. The same can be said for the instant case. Therefore, just as the immunity provision did not preclude the insured from recovering in *Seattle First National Bank*, it would seem that the immunity provision should not preclude the plaintiff in the case at bar from asserting a claim for relief against WIGA.

WIGA attempts to distinguish *Seattle First National Bank*. It claims that, in that case, "the insureds commenced the action but

no claim of immunity was raised since it was a pure statutory construction." To the extent that the sentence can be comprehended, it seems that WIGA is arguing that *Seattle First National Bank* is distinguishable because the issue there involved whether a certain form of insurance was, in substance, equivalent to a form of insurance for which the statute precluded coverage. It is true that the identical issue is not disputed here. However, the difference is irrelevant. Even WIGA admits that *Seattle First National Bank* "involve[d] particular constructions of the Act which were determinable as a matter of law." The same can be said of the case at bar: whether WIGA has a duty to reasonably settle is a question of law.

*Seattle First National Bank* is significant for another reason. There, the Washington Supreme Court held that, for the purpose of applying a contractual attorney's fees provision, the insured's suit against WIGA was based on contract. Specifically, the Washington Supreme Court stated:

> [A]n action is on a contract if the action arose out of the contract and if the contract is central to the dispute. Here, the [insurance] agreements are the source of this action and central to the dispute. . . . We thus conclude that this is an action on the contract. . . .

*Seattle First National Bank*, 804 P.2d at 1270.[24] At the very least, this language implies that WIGA's statutory duties are derived from the contractual duties assumed by the insurer. The opinion's language concluding that "this is an action on the contract" also makes it likely that the insured can actually sue WIGA in contract. However, since the appellee in the case at bar specifically noted that her claim was to enforce WIGA's "statutory obligations", we need not

**23.** A similar message is apparent in *Agency Budget Corp. v. Washington Ins. Guar. Assoc.*, 93 Wash.2d 416, 610 P.2d 361 (1980). There, the Washington Supreme Court considered whether an amendment to RCW 48.32 applied retroactively. While the court ruled that the amendment could only be applied prospectively, the language that it used is informative. It stated that, "the 1976 amendment created a *new cause of action* [for insureds] and corresponding liability [for WIGA]." *Id.* 610 P.2d at 366 (emphasis added). In our view this language contemplates

that causes of action can be maintained against WIGA.

**24.** This holding differs from California law, since the California Supreme Court held that the California Insurance Guaranty Association can be liable for failure to fulfill its statutory duties, but is immune from common law claims. *Isaacson v. California Ins. Guar. Assoc.*, 44 Cal.3d 775, 244 Cal.Rptr. 655, 664–65, 750 P.2d 297, 306 (1988).

address whether appellee might have also asserted a claim in contract for relief against WIGA.[25]

We also find it telling that in Pennsylvania, which has an immunity provision substantially identical to Washington's, a federal district court has held that the Pennsylvania Insurance Guaranty Association (PIGA) has a statutory duty to settle claims. *T & N PLC v. Pennsylvania Ins. Guar. Assoc.*, 800 F.Supp. 1259 (E.D.Pa.1992). There, the court stated:

> [The insured] alleges that PIGA has failed to investigate, pay, or settle, an alleged covered claim, and has failed to advise [the insured] of purported claims procedures. Taken together, however, these allegations are undeniably part of PIGA's statutory powers and duties to adjust, handle, and pay covered claims while denying all others.... To the extent that we may ultimately find that [the insured's] claims are in fact covered claims, PIGA may lose its statutory immunity to the extent that it then fails to assume, at such later date, its payment obligations in a timely manner.

*Id.* at 1265. We read this language as holding that PIGA is immune only from allegations of wrongdoing for claims which are not "covered claims," but that PIGA has a statutory obligation to settle claims. We think that the same reasoning applies to WIGA.

WIGA also relies on three cases from other states for the proposition that guaranty associations have no duty to reasonably settle claims. WIGA first relies on *Schreffler v. Pennsylvania Ins. Guar. Assoc.*, 402 Pa.Super. 309, 586 A.2d 983 (1991). Interestingly, that case involved facts virtually identical to the facts in the case at hand. However, *Schreffler* supports our conclusion that WIGA has a statutory duty to accept reasonable settlements. The case states only that a "bad faith" claim cannot arise against PIGA. We take this to mean a common-law claim. However, *Schreffler* specifically states that, "settlement is a power conferred upon PIGA under the terms of the Act." *Id.* 586 A.2d at 985. Therefore, *Schreffler* merely states that an insured cannot sue the guaranty association in tort or contract. It makes no mention of whether the insured can sue the guaranty

25. Given the Washington Supreme Court's holding, it would seem that the insured could have sued WIGA on the insurance contract for a bad faith handling of the insurance claim. In *Safeco Ins. Co. of America v. Butler*, 118 Wash.2d 383, 823 P.2d 499, 503 (1992), the court stated, "An action for bad faith handling of an insurance claim sounds in tort." However, the case does not imply that an insurer can be sued only in tort. Additionally, that case contains no discussion of the origin of the duty of good faith which an insurer owes to an insured. An earlier Washington Supreme Court decision does contain such a discussion. However,

> [r]egardless of whether a good faith duty in the realm of insurance is cast in the affirmative or the negative, the source of the duty is the same. That source is the fiduciary relationship existing between the insurer and insured. *Such a relationship exists not only as a result of the contract between insurer and insured ....*

*Tank*, 715 P.2d at 1136 (emphasis added). Thus, while *Safeco* allows an insured to sue in tort, *Tank* recognizes that the duty of good faith arises in contract. Therefore, it seems that in Washington, an insured can sue an insurer in either tort or contract for bad faith handling of an insurance claim.

A Washington appellate court held in *Vaughn v. Vaughn*, 23 Wash.App. 527, 597 P.2d 932, 934 (1979), that bad faith claims sound exclusively in tort. However, the two Washington Supreme Court cases on which the *Vaughn* court relied provide questionable support for this proposition. First, *Vaughn* relied on *Hamilton v. State Farm Ins. Co.*, 83 Wash.2d 787, 523 P.2d 193 (1974). However, that case does not seem to address the issue of whether bad faith claims sound in tort or in contract. Second, *Vaughn* relied on *Murray*, 355 P.2d at 985. However, that case does not state that tort is the exclusive field of law by which an insured can recover against an insurer. Furthermore, *Murray* does not contain the same sort of in-depth discussion of the issue as does *Tank*. Finally, we note that an early Washington Supreme Court case, *Evans*, 245 P.2d at 480, explicitly declined to address whether a bad faith claim could sound in contract. Therefore, we see no obstacle that would prohibit an insured from suing WIGA in contract for bad faith handling of a claim.

We note in passing that the appellate court in *Vaughn* also held that tort claims for bad faith handling of an insurance claim could not arise against WIGA. Interestingly, the court did not consider the immunity provision of the act, but instead reasoned that such a tort would not be a "covered claim" within the meaning of RCW 48.32.030(4). *Vaughn*, 597 P.2d at 934. In any case, *Vaughn's* holding concerning tort claims against WIGA does not speak to the contract claims against WIGA sanctioned by *Seattle First National Bank*, or to the statutory claim at issue in this case.

association for its statutory obligation of settlement.[26]

Next, WIGA relies on *Fernandez v. Florida Ins. Guar. Assoc.*, 383 So.2d 974 (Fla.App. 1980). In that case, the insured sued the Florida Insurance Guaranty Association (FIGA) after FIGA refused to settle a claim within the policy limit, and a jury subsequently returned a jury verdict in excess of the policy limits. The court ruled that the immunity provision, virtually identical to Washington's, precluded the suit. It is unclear from the opinion whether the suit was brought in contract, in tort, or as a statutory action. If the suit was brought in tort or contract, it does not speak to whether WIGA can be sued for its statutory obligations. And if the suit was brought to enforce FIGA's statutory obligations, we think that the Florida court misinterpreted the immunity provision by ruling that FIGA was immune from the suit. The same criticism applies to *Veillon v. Louisiana Ins. Guar. Assoc.*, 608 So.2d 670 (La.App.1992), the last case on which WIGA relies.

■ We hold that WIGA had no immunity for a claim to enforce its statutory duties.

C. *Was the Covenant Settlement Enforceable in Light of the Fact that WIGA Did Not Breach Its Duty to Defend?*

■ WIGA's third argument is somewhat confused. We believe that WIGA is arguing as follows: WIGA concedes that where an insurer or insurance guaranty association refuses to defend an action, the insured is free to settle the action and then seek recovery from the insurer.[27] However, where, as here, the insurer provides a defense but merely refuses to settle the action, no action may be brought against the insurer so long as the insured faces no actual risk of loss. Because Ramsey covenanted not to enforce the judgment against the insured, WIGA claims it cannot subsequently be held liable.

In support of this argument, WIGA argues that the cap provision on the total amount of covered claims contemplates that the insured will be exposed to excess judgments. WIGA reasons from this that because the Act mandates that the cooperation provision in the policy is applicable,[28] the drafters of the Act must have intended that the risk of the insured and the risk of the pool should be linked. Thus, the insureds may not retain their coverage after settling in such a way as to eliminate the risk of an excess judgment.

This conclusion simply does not follow from WIGA's stated premise. WIGA's brief seems to imply that the Act, by virtue of setting a $300,000 cap on awards, contemplates that the insured will be forced to bear the risk of an excess judgment in some cases. However, to the extent that insureds will sometimes need to bear the burden of excess judgments, this burden seems to be merely the result of practical exigencies, rather than the result of an intent to couple the risk of the insured with the risk of liability by the pool. As noted by WIGA in its brief, the cap on recovery by any single claimant is aimed at assuring that funds are available at an acceptable cost to guaranty at least a minimum payment to all deserving claimants. WIGA cites no authority suggesting that there is any other purpose for this provision.

■ We also note two other factors that militate against WIGA's argument. First, Washington law does allow assignments of claims against insurance companies. *Planet Ins. Co. v. Wong*, 74 Wash.App. 905, 877 P.2d 198, 201 (1994); *Chaussee v. Maryland Casualty Co.*, 60 Wash.App. 504, 803 P.2d 1339, 1342–43 (1991), *modified*, 812 P.2d 487 (Wash.App.1991). This is so even when the insured has not "fronted" the judgment money, and allows a third party to proceed against the insurer. *Greer*, 743 P.2d at 1244 (insurer breached duty to defend); *Chaussee*, 803 P.2d at 1343 (insurer breached duty to settle). Second, to the extent that there

---

**26.** However, *T & N*, 800 F.Supp. at 1259, makes clear that an insured can sue the guaranty association on such a theory.

**27.** *See Greer v. Northwestern Nat'l Ins. Co.*, 109 Wash.2d 191, 743 P.2d 1244, 1251 (1987).

**28.** *See* RCW 48.32.090(1) (requiring insureds to cooperate with WIGA). Coluccio's policy contained a standard cooperation provision which required the insured to cooperate in the investigation, settlement and defense of any claim.

might be collusion between an insured and a third party who enter a settlement such as the one which was reached here, that risk was eliminated in the case at hand, since a jury independently ascertained that a $200,000 settlement was reasonable. Therefore, we reject WIGA's argument that the consent settlement bars Ramsey's claim as a matter of law.

### D. Could a Reasonable Jury Have Determined the Claim was Worth $200,000?

■ The final issue [29] raised by WIGA is whether the superior court improperly denied its motion for a judgment not withstanding the verdict.[30] WIGA makes two arguments in this regard. First, it argues that under *Isaacson v. California Ins. Guar. Ass'n*, 44 Cal.3d 775, 244 Cal.Rptr. 655, 750 P.2d 297 (1988),[31] before awarding damages, the jury had to find that "a judgment against the insured in excess of [CIGA's] statutory limit of liability is likely." *Isaacson*, 244 Cal.Rptr. at 667, 750 P.2d at 309. Thus, in the instant case, Ramsey would have had to show that a verdict of more than $300,000 was likely. Second, WIGA argues that no reasonable jury could have accepted Ramsey's $200,000 settlement.

As to WIGA's first argument, it is correct that the California Supreme Court formulated the test in *Isaacson* in this manner. However, this is not the only permissible formulation of WIGA's statutory duty. Because the insureds must demonstrate that they were harmed by the guaranty association's violation of its statutory duty, the inquiry must include consideration of the potential harm to the insured which was caused by the failure of the association to settle (i.e. an excess verdict). In the present case, the jury was instructed, "[W]hen making a decision about a settlement offer, WIGA is required to consider the personal financial interests of Coluccio and Mr. Ursino equally with its own financial interests." Additionally, when considering the reasonableness of any particular settlement offer, the jury was instructed to consider "[t]he risks and the expense of continuing the trial between Ms. Ramsey and Coluccio and Mr. Ursino" and "[t]he ability of Coluccio and Mr. Ursino to pay any adverse judgment." We think that the issue of the extent of WIGA's statutory duty was sufficiently encompassed in these jury instructions.

■ Furthermore, *Isaacson* is a California case. It seems to us that the relevant standard as to whether the settlement was reasonable is found in *Chaussee v. Maryland Casualty Co.*, 60 Wash.App. 504, 803 P.2d 1339, 1343 (1991). There, the court stated that, when evaluating the reasonableness of a settlement combined with a covenant not to execute against the insured, trial courts should adopt the test first stated in *Glover v. Tacoma Gen. Hosp.*, 98 Wash.2d 708, 658 P.2d 1230 (1983). The *Glover* factors are

> [t]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and prepara-

---

29. In its points on appeal, WIGA also challenged the failure of the superior court to include a jury instruction stating that WIGA was immune from suit, and for including several instructions setting forth the elements of Ramsey's claim. Because we have concluded that WIGA was not in fact immune from suit, it follows that WIGA's objections to the court's instructions are without merit. The other issues which WIGA raised in its points on appeal are waived, since WIGA failed to argue them in its briefs. *See Wetzler v. Wetzler*, 570 P.2d 741, 742–43 (Alaska 1977).

30. In determining whether the superior court erred in denying a motion for directed verdict or judgment n.o.v., we must decide whether, after considering the evidence in the light most favorable to the non-movant, a reasonable jury could reach only one conclusion on the issue in controversy. *Beaumaster v. Crandall*, 576 P.2d 988 (Alaska 1978).

31. The superior court relied on *Isaacson* in its decision that WIGA was not immune from suit. As our discussion of the immunity provision makes clear, we do not rely on that case for our conclusion that WIGA is not immune.

tion of the case; and the interests of the parties not being released.

*Id.* 658 P.2d at 1236. However, since WIGA nowhere asked this court to consider whether the *Glover* factors were satisfied, we do not address the issue.

■ As to WIGA's second argument, there is ample evidence in the record which could form the basis of a finding that the claim should have been reasonably settled for $200,000. Even if none of the witnesses had testified that the claim was worth $200,000, the jury was given sufficient details concerning the underlying events and the proceedings in the earlier trial to make its own assessment of the value of the claim. The evidence introduced included Ramsey's initial settlement brochure which estimated damages, not including punitives, at almost $250,-000. Also, the judge in the underlying case estimated that the award could be anywhere between zero and $500,000, and should probably be valued at $175,000. Additionally, the attorneys which WIGA appointed to represent Ursino and Coluccio recommended that WIGA accept Ramsey's offer to settle for $200,000.[32] Finally, there was a good deal of evidence regarding how the trial was progressing. Based on these details a reasonable jury could find that the claim should reasonably have been settled for $200,000.

## IV. *CONCLUSION*

The decision of the superior court is AFFIRMED.

---

**32.** This fact is not necessarily probative as to the value of the claim, since, though the attorneys were appointed and paid by WIGA, they represented Ursino and Coluccio. The attorneys' advice to settle within the statutory limits might have been biased, since such a settlement would relieve their clients of any financial liability.